**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JEANNIE PATORA, individually and on behalf of all others similarly situated, | x : : |
| Plaintiff, | : Case No. : : |
| v. | : : : |
| TREEHOUSE FOODS, INC., | : **CLASS ACTION COMPLAINT** : |
| Defendant. | : **JURY TRIAL DEMANDED** : : : x |

Plaintiff, Jeannie Patora (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, by her attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

## NATURE OF THE ACTION

1.      Treehouse Foods, Inc., is a manufacturer of frozen breakfast food products, including frozen waffles and pancakes.

2.      Plaintiff brings this case on behalf of herself and all other consumers nationwide who bought Defendant's frozen breakfast products manufactured at its Brantford, Ontario, Canada facility which possess an expiration or "best by" date between October 1, 2024, and October 11, 2025 (collectively herein, the "Products"). See Exhibits A[1] and B.[2]

---

[1] Exhibit A is a true and correct copy of the October 18, 2024 Treehouse Foods, Inc. recall notice, available at https://www.treehousefoods.com/news-and-media/press-releasedetails/2024/TreeHouse-Foods-Announces-Voluntary-Recall-of-Certain-Waffle-Products-Dueto-the-Potential-for-Listeria-monocytogenes-Contamination/default.aspx

[2] Exhibit B is a true and correct copy of the October 22, 2024 Treehouse Foods, Inc. recall notice, available at https://www.treehousefoods.com/news-and-media/press-releasedetails/2024/TreeHouse-Foods-Announces-Expansion-of-Voluntary-Recall-to-Include-AllWaffle-and-Pancake-Products-Due-to-the-Potential-for-Listeria-monocytogenesContamination/default.aspx.

3.      The Products were and are unfit for distribution and/or consumption because they became contaminated with Listeria monocytogenes, a harmful bacterium which causes the infection listeriosis and can lead to severe symptoms including but not limited to fever, muscle aches, fatigue, confusion, seizures, and loss of balance. Individuals who are pregnant and become infected with listeriosis can suffer negative pregnancy outcomes including miscarriage and stillbirth. In the most severe cases, listeriosis can be fatal.

4.      Defendant manufactures, warrants, advertises, markets, distributes, and sells various frozen breakfast products under several brand names, including 365 Organic, Best Choice, Always Save, Schnucks, Private Selection, Kodiak Cakes, and Kroger, among many others. For the full list of brands and products affected, refer to Exhibits A and B.

5.      On October 18, 2024, Defendant announced a recall of certain frozen waffle products due to the potential for contamination with L. monocytogenes. The recall notice provided information for consumers regarding which products were affected and stated "[t]here have been no confirmed reports of illness linked to the recalled products to date."[3] Defendant claims the contamination was discovered through routine testing.

6.      Treehouse expanded the recall on October 22, 2024 to include all products still within their shelf-life manufactured at its Brantford, Ontario, Canada facility, and now includes frozen toaster waffles, Belgian waffles, and pancake products.[4] The October 18, 2024 and October 22, 2024 recalls are collectively referred to as the "Recalls."

---

[3] Exhibit C is a true and correct copy of the Food and Drug Administration's October 18, 2024 recall announcement, available at https://www.fda.gov/safety/recalls-market-withdrawals-safetyalerts/treehouse-foods-announces-voluntary-recall-certain-waffle-products-due-potential-listeria.

[4] Exhibit D is a true and correct copy of the Food and Drug Administration's October 22, 2024 recall announcement, available at https://www.fda.gov/safety/recalls-market-withdrawals-safetyalerts/treehouse-foods-announces-expansion-voluntary-recall-include-all-waffle-and-pancakeproducts-due

7.    Plaintiff is an individual who purchased the Products without notice or knowledge that the Products were worthless and/or worth less than the price she paid.

8.    Listeriosis is a serious infection which, per the CDC, is "intestinal" but also "invasive," indicating it begins in the intestinal system but can spread to other systems of the body. Listeriosis is particularly harmful to individuals who are pregnant, newborns, older adults, and individuals with weakened immune systems.[5]

9.    Severe Listeriosis infections can cause additional complications, particularly if they spread to the bloodstream or the brain. In such circumstances, the infection can cause meningitis.[6]

10.    L. monocytogenes is a particularly problematic contaminant because it can reproduce to dangerous levels in low temperatures – even in refrigerators and freezers.[7]

11.    Defendant manufactures, sells, and distributes the Products to consumers, including Plaintiff, across the United States.

12.    Defendant marketed and advertised the Products as being fit or suitable for human consumption, represented that the Products provide nutrition and/or guaranteed the Products for taste and nutrition. Defendant's marketing and advertising of the Products is false, deceptive, and misleading to reasonable consumers because the Products were or could have been contaminated with L. monocytogenes, and thus were not as advertised, represented, or guaranteed.

13.    Considering that there exist on the market alternative products which lack contamination of L. monocytogenes, the contamination is avoidable.

---

[5] Symptoms of Listeria infection, Centers for Disease Control and Prevention, https://www.cdc.gov/listeria/signs-symptoms/index.html
[6] Listeria infection, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/listeriainfection/symptoms-causes/syc-20355269
[7] *Id.*

14.    Defendant did not notify Plaintiff or Class members of the risk of contamination through the Product's labels, ingredients, packaging or advertising—an omission which caused serious harm to the purchasers of the Products.

15.    Plaintiff and Class members would not have purchased the Products had they known the products contained, or might have contained, dangerous or toxic levels of L. monocytogenes and/or that Defendant did not adequately test, screen, and/or inspect the Products before selling them.

16.    Accordingly, Plaintiff brings this action and assert claims on behalf of herself and all other similarly situated persons (defined below) for negligence, negligent misrepresentation, breach of express and implied warranties, violation New York General Business Law §§ 349 and 350, and unjust enrichment.

17.    Plaintiff brings this action against Defendant on behalf of herself and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

## JURISDICTION AND VENUE

18.    This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section §1332(d) in that (1) this is a class action involving more than 100 class members; (2) Plaintiff is a citizen of New York, and Defendant TREEHOUSE FOODS, INC. is a citizen of Illinois; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

19.    This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the state of New York, contracts to supply goods within the state of New York, and supplies goods within the state of New York.

4

20.     Venue is proper because Plaintiff and many Class Members reside in the Southern District of New York, and throughout the state of New York.  A substantial part of the events or omissions giving rise to the Classes' claims occurred in this district.

**PARTIES**

**Plaintiff**

21.     Plaintiff is a citizen and resident of Dutchess County, New York.  During the applicable statute of limitations period, Plaintiff purchased Defendant's Products that possibly contained Listeria monocytogenes at various retail locations in Dutchess County, including Products that were subject to the recall.  Prior to purchasing the Products, Plaintiff saw the packaging of the Products and relied on the representations on the Products' packaging regarding the Products' ingredients, benefits, and healthfulness.

22.     Had Defendant not made the false, misleading, and deceptive representations and omissions regarding the contents of the Products, Plaintiff would not have been willing to purchase the Products or pay as much for the Products.  Plaintiff purchased, purchased more of, and/or paid more for, the Products than she would have had she known the truth about the Products.  The Products Plaintiff received were worthless because they possibly contained Listeria monocytogenes.  Alternatively, Plaintiff paid a price premium based on Defendant's false, misleading, and deceptive misrepresentations and omissions.  Accordingly, Plaintiff was injured in fact and lost money as a result of Defendant's improper conduct.

**Defendant**

23.     Defendant, TREEHOUSE FOODS, INC. is a Delaware company with its principal place of business in Oak Brook, Illinois.

24.     Defendant manufactures, markets, advertises, and distributes the Products throughout the United States.  Defendant created and/or authorized the false, misleading, and deceptive advertisements, packaging, and labeling of its Products.

### FACTUAL BACKGROUND

25.     Defendant manufactures, markets, advertises, and sells frozen food products.

26.     Consumers have become increasingly concerned about the effects of ingredients in products that they orally ingest.  Companies, such as Defendant, have capitalized on consumers' desire for frozen food products, and indeed, consumers are willing to pay, and have paid, a premium for these products.

27.     Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains unsafe substances, such as *Listeria monocytogenes*, especially at the point of sale, and therefore must and do rely on Defendant to truthfully and honestly report what the Products contain or are at risk of containing on the Products' packaging or labels.

28.     The Products' packaging does not identify *Listeria monocytogenes*.  Indeed, *Listeria monocytogenes* is not listed anywhere on the packaging, nor is there any warning about the inclusion (or even potential inclusion) of *Listeria monocytogenes* in the Products.  This leads reasonable consumers to believe the Products do not contain, and are not at risk of containing, *Listeria monocytogenes*.

29.     However, the Products contain, or are at risk of containing, *Listeria monocytogenes*.

30.     Defendant is a large and sophisticated corporation that has been in the business of producing, manufacturing, selling, and distributing frozen food products for many years, including producing and manufacturing the contaminated Products.

31.    Defendant is in the unique and superior position of knowing the ingredients and raw materials used in the manufacturing of its Products and possesses unique and superior knowledge regarding the manufacturing process of the Products, the manufacturing process of the ingredients and raw materials the Products contain, and the risks associated with those processes, such as the risk of *Listeria monocytogenes* contamination, as well as the ability to test the Products for *Listeria monocytogenes* contamination prior to releasing the Products into the stream of commerce. Such knowledge is solely within the possession of Defendant.

32.    Accordingly, Defendant possesses superior knowledge regarding the risks involved in the production and manufacturing of its Products.  Such knowledge is not readily available to consumers like Plaintiff and Class Members.

33.    Defendant has a duty to provide consumers, like Plaintiff and Class Members, with accurate information about the contents of the Products.

34.    Therefore, Defendant's false, misleading, and deceptive omissions regarding the Products containing *Listeria monocytogenes* is likely to continue to deceive and mislead reasonable consumers and the public, as they have already deceived and misled Plaintiff and the Class Members.

35.    Defendant's misrepresentations and omissions were material and intentional because people are concerned with what is in the products that they orally ingest.  Consumers such as Plaintiff and the Class Members are influenced by the marketing and advertising campaign, the Products' labels, and the listed ingredients.  Defendant knows that if they had not omitted that the Products contained Listeria monocytogenes, then Plaintiff and the Class would not have purchased the Products, or, at the very least, would not have paid nearly as much for the Products.

36.    Consumers rely on marketing and information in making purchasing decisions.

37.    By omitting that the Products include Listeria monocytogenes on the labels of the Products throughout the Class Period, Defendant knows that those omissions are material to consumers since they would not purchase a product that contained *Listeria monocytogenes*.

38.    Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

39.    Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the Class Members.

40.    In making the false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would pay a premium for a product marketed without *Listeria monocytogenes* over comparable products not so marketed.

41.    As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representation and omission, Defendant injured Plaintiff and the Class Members in that they:

a.    Paid a sum of money for Products that were not what Defendant represented;

b.    Paid a premium price for Products that were not what Defendant represented;

c.    Were deprived of the benefit of the bargain because the Products they purchased was different from what Defendant warranted;

d.    Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented; and

e.    Were denied the benefit of the properties of the Products Defendant promised.

42.      Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class Members would not have been willing to pay the same amount for the Products they purchased and/or Plaintiff and the Class Members would not have been willing to purchase the Products.

43.      Plaintiff and the Class Members paid for Products that do not contain Listeria monocytogenes.  Since the Products do indeed or possibly contain Listeria monocytogenes, the Products Plaintiff and the Class Members received were worth less than the Products for which they paid.

44.      Plaintiff and the Class Members all paid money for the Products; however, Plaintiff and the Class Members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions.  Plaintiff and the Class Members purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the Products.  Consequently, Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

45.      Plaintiff and Class Members saw the Products' packaging prior to purchasing the Products.  Had Plaintiff and Class Members known the truth about the Products, i.e., that they do or possibly contain Listeria monocytogenes, they would not have been willing to purchase them at any price, or, at minimum would have paid less for them.

46.      Defendant issued a recall of its Products on October 18, 2024[8], and then issued an expanded recall on October 22, 2024[9] (together as the "Recall").

---

[8] https://www.treehousefoods.com/news-and-media/press-release-details/2024/TreeHouse-Foods-Announces-Voluntary-Recall-of-Certain-Waffle-Products-Due-to-the-Potential-for-Listeria-monocytogenes-Contamination/default.aspx
[9] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/treehouse-foods-announces-expansion-voluntary-recall-include-all-waffle-and-pancake-products-due

47.     To be eligible for a refund, "Consumers should check their freezers for any of the products listed below and dispose of them or return the recalled product to the place of purchase for credit.  Consumers with questions may contact TreeHouse Foods at 1-800-596-2903, Monday – Friday, 8:00 a.m. – 4:30 p.m. (CST)."[10]  This recall was deliberately designed to preclude the vast majority of consumers from receiving a refund.

48.     Defendant is well aware that any consumer who was made aware of the recall would be predisposed to throwing the Products away.  Defendant is also aware that consumers shop in multiple locations and may or may not purchase the Products at the same location each time.  Also, most consumers do not maintain receipts and therefore cannot obtain a refund at the purchase location for the recalled Products.

49.     Accordingly, Defendant's recall is designed to reach very few people and designed to benefit very few of the consumers who purchased the Products.

50.     The class action remedy is superior to Defendant's failed recall in every conceivable fashion.

51.     Defendant's own recall and other testing confirmed and demonstrated the presence of Listeria monocytogenes in the Plaintiff's products.

## CLASS ALLEGATIONS

52.     Plaintiff brings this matter on behalf of herself and those similarly situated.  As detailed at length in this Complaint, Defendant orchestrated deceptive marketing and labeling practices.  Defendant's customers were uniformly impacted by and exposed to this misconduct.  Accordingly, this Complaint is uniquely situated for class-wide resolution.

---

[10] Id.

53. The Class is defined as all consumers who purchased the Products anywhere in the United States during the Class Period (the "Nationwide Class").

54. Plaintiff also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Products in the state of New York at any time during the Class Period (the "New York Subclass").

55. The Class and New York Subclass are referred to collectively throughout the Complaint as the Class.

56. The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

55. <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers in the Class and the New York Class who are Class Members as described above who have been damaged by Defendant's deceptive and misleading practices.

56. <u>Commonality</u>: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

    a. Whether Defendant was responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

    b. Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Products;

       c.  Whether Defendant made false and/or misleading statements and omissions to the Class and the public concerning the contents of its Products;

       d.  Whether Defendant's false and misleading statements and omissions concerning its Products were likely to deceive the public; and

       e.  Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members.

57.   <u>Typicality</u>: Plaintiff is a member of the Class. Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Defendant's Products. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

58.   <u>Adequacy</u>: Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the Class Members she seeks to represent, her consumer protection claims are common to all members of the Class, she has a strong interest in vindicating her rights, she has retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

59.   <u>Predominance</u>: Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class. The Class issues fully predominate over any individual issues because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

60.   <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a. The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b. The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

c. When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d. This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude their maintenance as a class action;

f. This class action will assure uniformity of decisions among Class Members;

g. The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h. Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by a single class action; and

i.   It would be desirable to concentrate in this single venue the litigation of all Class Members who were induced by Defendant's uniform false advertising to purchase its Products.

61.    Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## CLAIMS

### FIRST CAUSE OF ACTION
### NEGLIGENCE
### (On Behalf of Plaintiff and the Nationwide Class Members)

62.    Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

63.    At all times relevant, Defendant had a duty to provide Plaintiff and the other members of the Nationwide Class with safe food Products.

64.    Specifically, Defendant has a duty to provide the food Products as safe for human consumption to its potential consumers.

65.    Defendant breached this duty by failing to ensure the safety of its Products.

66.    As a result of Defendant's breach, Plaintiff and the other Class Members were harmed in that they suffered economic injury and lost the benefit of the bargain relating to their purchase price of the Products.

67.    Defendant's breach of its duty caused Plaintiff's and the other Class Members' damages both proximately and factually.

68.     Had Defendant properly designed, manufactured, or implemented a system in which Defendant's Products had been properly examined and tested for prior to sale, Plaintiff and the other Class Members would not have been injured and/or damaged as they would not have purchased contaminated Products.

## SECOND CAUSE OF ACTION
## NEGLIGENT MISREPRESENTATION
### (On Behalf of Nationwide Class and all Sub-Classes)

69.     Plaintiff hereby incorporates all other paragraphs of this Complaint and restates them as if fully set forth herein.

70.     Defendant's actions and omissions alleged herein constitute negligent misrepresentation.

71.     Defendant misrepresented material facts concerning the safety, suitability, and quality of its Products, including that the Products were nutritious, healthful, and suitable for human consumption.

72.     Defendant has no reasonable grounds for believing its misrepresentations were true. Among other things, Defendant represented that the Products were of high quality, healthy, safe, and suitable for human consumption. Defendant knew or should have known but failed to disclose that, contrary to its representations, the Products were contaminated or potentially contaminated with *L. monocytogenes* and were not fit for human consumption.

73.     Defendant made such misrepresentations with the intent to induce Plaintiff and Class and Sub-Class members to rely on its misrepresentations and purchase Products which were recalled.

74.     Plaintiff and Class and Sub-Class members had no knowledge of the falsity of Defendant's representations and reasonably believed them to be true. In justified reliance on

Defendant's misrepresentations, Plaintiff and Class and Sub-Class members purchased and consumed the Products containing or potentially containing *L. monocytogenes*, or provided them to family members for consumption

75.    As a direct and proximate consequence, Plaintiff and Class and Sub-Class members suffered harm. Among other things, she would not have purchased Defendant's Products, or they would have paid less had they known of the presence, or the potential presence, of *L. monocytogenes.*

76.    Plaintiff and Class and Sub-Class members are therefore entitled to damages and relief, as prayed for hereunder

### THIRD CAUSE OF ACTION
### BREACH OF EXPRESS WARRANTY
### (On Behalf of Nationwide Class and all Sub-Classes)

77.    Plaintiff hereby incorporates all other paragraphs of this Complaint and restates them as if fully set forth herein.

78.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Sub-Classes against Defendant for breach of express warranty.

79.    Defendant marketed and sold the Products into the stream of commerce with the intent that the Products would be purchased by Plaintiff and members of the Class and Subclasses.

80.    Defendant expressly warranted, advertised, and represented to Plaintiff and members of the Class and Sub-Classes that the Products were and are high quality, healthy, safe, and suitable for human consumption.

81.    Defendant made these express warranties regarding the Products' quality, ingredients, and suitability for human consumption in writing through its website, advertisements, and marketing materials and on the Products' packaging and labels. These express warranties

became part of the basis of the bargain that Plaintiff and members of the Class and Sub-Classes entered into upon Defendant's warranties, advertisements, and representations were made in connection with the sale of the Products to Plaintiff and members of the Class and Sub-Classes.

82.    Plaintiff and members of the Class and Sub-Classes relied on Defendant's warranties, advertisements, and representations regarding the Products in deciding whether or not to purchase Defendant's Products.

83.    Defendant's Products do not conform to Defendant's warranties, advertisements, and representations in that they are not safe or appropriate for consumption, as they were recalled due to *L. monocytogenes* contamination or potential contamination.

84.    Defendant should have discovered the contamination through its own testing and expertise, and/or based on testing conducting by various third parties as alleged herein that would have revealed the Products as contaminated with *L. monocytogenes*.

85.    Privity exists because Defendant expressly warranted to Plaintiff and members of the Class and Sub-Classes through the warranting, packaging, advertising, marketing, and labeling that the Products were high quality, healthy, safe, and suitable for human consumption, and by failing to make any mention of dangerous levels of *L. monocytogenes* contamination. purchasing the Products. As a direct and proximate result of Defendant's conduct, Plaintiff and members of the Class and Sub-Classes suffered actual damages in that they purchased Products that were worth less than the price she paid, and she would not have purchased the Products had they known of the risk and/or presence of dangerous levels of *L. monocytogenes* contamination that do not conform to the Products' marketing and advertisements.

86.     Plaintiff and members of the Class and Sub-Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

## FOURTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (On Behalf of Nationwide Class and all Sub-Classes)

87.     Plaintiff hereby incorporate all other paragraphs of this Complaint and restates them as if fully set forth herein.

88.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Sub-Classes against Defendant.

89.     At all relevant times, Defendant was the merchant, manufacturer, marketer, warrantor, and/or seller of the Products. Defendant knew or had reason to know of the specific use for which the Products were purchased.

90.     Plaintiff purchased the Products manufactured and marketed by Defendant at retailers and online retailers for retail sale to consumers throughout the United States.

91.     The Products are and were at all relevant times goods within the meaning of various state statutes set forth herein.

92.      An implied warranty that the Products were merchantable arose by operation of law as part of the sale of the Products.

93.     Defendant impliedly warranted to Plaintiff and the Class and Sub-Classes that the Products were of merchantable quality, fit for their ordinary use, and conformed to the messaging, characterizations, promises, and affirmations of fact made on the Products' packaging, labels and/or advertisements, including that the food was high quality, healthy, safe, and suitable for human consumption. The Products when sold at all times were not in merchantable condition and

were and are not fit for the ordinary purpose of providing safe and nutritious food. The Products were and are not safe for consumption because they were recalled due to L. monocytogenes contamination or potential contamination.

94.    Plaintiff and members of the Class and Sub-Classes relied on such messaging, characterizations, promises, and affirmations of fact when they purchased the Products. Contrary to Defendant's representations and warranties, the Products were not fit for their ordinary use – human consumption- and did not conform to Defendant's affirmations of fact and promises as they contained, or were at risk of containing, dangerous levels of *L. monocytogenes* contamination that do not conform to the packaging.

95.    As a consequence, Defendant breached its implied warranties upon selling such Products, as each product was recalled due to possible contamination with *L. monocytogenes*.

96.    Defendant cannot disclaim its implied warranty as it knowingly sold unsafe and hazardous Products.

97.    Defendant was on notice of this breach, as Defendant was aware or should have been aware of the *L. monocytogenes* contamination in the Products due to its own testing and expertise, and/or based on testing conducted by various third parties as alleged herein that revealed the Products as contaminated with L. monocytogenes.

98.    As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff and members of the Class and Sub-Classes have been damaged in an amount to be proven at trial.

99.    Plaintiff and members of the Class and Sub-Classes have been excused from performance of any warranty obligations as a result of Defendant's conduct described herein. 150. Privity exists because Defendant impliedly warranted to Plaintiff and members of the Class and

Sub-Classes through the warranting, packaging, advertising, marketing, and labeling that the Products were high quality, healthy, safe, and suitable for human consumption, and by failing to make any mention of *L. monocytogenes* contamination or potential contamination.

100.    Nonetheless, privity is not required here because Plaintiff and each Class and Subclass member are intended third-party beneficiaries of contracts between Defendant and its distributors and buyers, and of their implied warranties. The distributors and buyers were not intended to be the ultimate consumers of the Products and have no rights under the warranties of the Products; the warranties were designed for and intended to benefit consumers only.

101.    As a direct and proximate result of Defendant's conduct, Plaintiff and members of the Class and Sub-Classes have suffered actual damages in that they have purchased Products that are worth less than the price they paid and that they would not have purchased at all had they known of the potential or actual L. *monocytogenes* contamination.

102.    Plaintiff and members of the Class and Sub-Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

**FIFTH CAUSE OF ACTION**
**FRAUDULENT CONCEALMENT - FRAUD BY OMISSION**
**(On Behalf of Nationwide Class and all Sub-Classes)**

103.    Plaintiff hereby incorporates all other paragraphs of this Complaint and restates them as if fully set forth herein.

104.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Sub-Classes against Defendant for fraud by omission.

105.    Defendant concealed from and failed to disclose to Plaintiff and members of the Class and Sub-Classes that the Products were contaminated or potentially contaminated with L.

monocytogenes and do not conform to the Products' labels, packaging, advertising, and statements, including, but not limited to, representations that they were high quality, healthy, safe, and suitable for human consumption.

106. Defendant was under a duty to disclose to Plaintiff and members of the Class and Sub-Classes the true quality, characteristics, ingredients and suitability of the Products because: (1) Defendant was in a superior position to know the true state of facts about the Products; (2) Defendant was in a superior position to know the actual ingredients, characteristics, and suitability of the Products for consumption; (3) Defendant had exclusive knowledge of its own test results showing *L. monocytogenes* contamination in its Products; and/or (4) Defendant knew that Plaintiff and members of the Class and Sub-Classes could not reasonably have been expected to learn or discover that the Products were misrepresented in the packaging, labels, advertising, and websites prior to purchasing the Products.

107. The facts concealed or not disclosed by Defendant to Plaintiff and members of the Class and Sub-Classes are material in that a reasonable consumer would have considered them important when deciding whether to purchase the Products. No reasonable consumer would have purchased the Products had Defendant adequately and fully disclosed the truth.

108. Defendant knew that this omission was material information that Plaintiff and members of the Class and Sub-Classes required, and Defendant intentionally omitted and failed to disclose this information to induce the Plaintiff and members of the Class and Sub-Classes to purchase the Products.

109. Plaintiff and members of the Class and Sub-Classes did not know or suspect that the Products were unsafe or contained unhealthy ingredients.

110.    Plaintiff and members of the Class and Sub-Classes justifiably relied on Defendant's omissions to their detriment. The detriment is evident from the true quality, characteristics, and ingredients of the Products, which are inferior when compared to how the Products are advertised and represented by Defendant.

111.    As a direct and proximate result of Defendant's conduct, Plaintiff and members of the Class and Sub-Classes have suffered actual damages in that they purchased the Products that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of *L. monocytogenes* contamination that do not conform to the products' labels, packaging, advertising, and statements.

112.    Plaintiff and members of the Class and Sub-Classes seek actual and punitive damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

**SIXTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(On Behalf of Nationwide Class and all Sub-Classes)**

113.    Plaintiff hereby incorporates all other paragraphs of this Complaint and restates them as if fully set forth herein.

114.    Plaintiff and members of the Class and Sub-Classes conferred a benefit upon Defendant. Plaintiff and members of the Class and Sub-Classes paid money for the Products which were not as represented; they were not suitable for human consumption, they did not provide targeted nutrition for humans as represented, and/or they did not meet Defendant's guarantees promising taste and nutrition. Defendant has unjustly retained the benefits conferred upon it by Plaintiff and Class and Sub-Class members.

115.    The circumstances as alleged herein make it inequitable for Defendant to retain such benefit. Specifically, Defendant retained that benefit even though the Products contain or may contain *L. monocytogenes*, which renders the Products unsafe and unsuitable for human consumption. If Plaintiff and Class and Sub-Class members had known the true nature of the Products, they would not have paid money for them or would have paid less.

116.    Plaintiff and Nationwide Class and Sub-Class members are therefore entitled to disgorgement and/or restitution as prayed for hereunder.

**SEVENTH CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 349**
**(On Behalf of Plaintiff and New York Subclass Members)**

117.    Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

118.    New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

119.    The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Subclass Members seek monetary damages against Defendant..

120.    There is no adequate remedy at law.

121.    Defendant misleadingly, inaccurately, and deceptively advertises and markets its Products to consumers.

122.    Defendant's improper consumer-oriented conduct—including failing to disclose that the Products have *Listeria monocytogenes* —is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Subclass Members to purchase Defendant's Products and

to use the Products when they otherwise would not have. Defendant made the untrue and/or misleading statements and omissions willfully, wantonly, and with reckless disregard for the truth.

123.    Plaintiff and the New York Subclass Members have been injured inasmuch as they purchased Products that were mislabeled, unhealthy, and entirely worthless. Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and paid for.

124.    Defendant's advertising and Products' packaging and labeling induced Plaintiff and the New York Subclass Members to buy Defendant's Products.

125.    Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Subclass Members have been damaged thereby.

126.    As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass Members are entitled to monetary, statutory, compensatory, treble and punitive damages, interest, and attorneys' fees and costs.

**EIGHTH CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 350**
**(On Behalf of Plaintiff and the New York Subclass Members)**

127.    Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

128.    N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

129.    N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be

taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

130.    Defendant's labeling and advertisements contain untrue and materially misleading statements and omissions concerning its Products inasmuch as it misrepresents that the Products are safe for use and doesn't list that the Products contain *Listeria monocytogenes*.

131.    Plaintiff and the New York Subclass Members have been injured inasmuch as they saw the labeling, packaging, and advertising and purchased Products that were mislabeled, unhealthy, and entirely worthless.  Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and paid for.

132.    Defendant's advertising, packaging, and Products' labeling induced Plaintiff and the New York Subclass Members to buy Defendant's Products.

133.    Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

134.    Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

135.    Defendant made the material misrepresentations described in this Complaint in its advertising and on the Products' packaging and labeling.

136.    Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large.  Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

137.    As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary, statutory, compensatory, treble and punitive damages, interest, and attorneys' fees and costs.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and the Class, prays for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the FRCP;

(b) Declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

(c) Awarding monetary damages and treble damages;

(d) Awarding statutory damages of $50 per transaction, and treble damages for knowing and willful violations, pursuant to N.Y. GBL § 349;

(e) Awarding statutory damages of $500 per transaction pursuant to N.Y. GBL § 350;

(f) Awarding punitive damages;

(g) Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys, experts, and reimbursement of Plaintiff's expenses; and

(h) Granting such other and further relief as the Court may deem just and proper.

Dated: March 28, 2025

Respectfully submitted,

**SULTZER & LIPARI, PLLC**

By: _____/s/ Jason P. Sultzer_____
Jason P. Sultzer, Esq.
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com

*Counsel for Plaintiff and the Class*